## UNIVERSAL LEAF TOBACCO COMPANY, INCORPORATED, Appellant,

### v.

## CONGOLEUM CORPORATION, Appellee.

### No. 77–1159.

United States Court of Appeals,
Fourth Circuit.

Argued March 17, 1977.

Decided May 19, 1977.

Herbert M. Wachtell, New York City (Theodore Gewertz, Bertram M. Kantor, Peter D. McKenna, New York City, Stanley M. Gorinson, Washington, D. C., Wachtell, Lipton, Rosen & Katz, New York City, George R. Humrickhouse, John O. Peters, David R. Johnson, Williams, Mullen & Christian, Richmond, Va., on brief), for appellant.

James L. Sanderlin, Richmond (Richard L. Williams, McGuire, Woods & Battle, Richmond, Va., Maurice J. McSweeney, Milwaukee, Wis., Foley & Lardner, Washington, D. C., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, WIDENER and HALL, Circuit Judges.

HAYNSWORTH, Chief Judge:

Universal Leaf Tobacco Company sought and was denied a preliminary injunction preventing Congoleum Corporation from making a tender offer for the outstanding common stock of Universal Leaf. Universal Leaf has appealed from the denial of that preliminary injunction.

Denial of the injunctive relief was predicated upon a finding that the contemplated offering price of $32.50 per share was not likely to produce a tender of more than 10 to 15% of Universal's stock, and, hence, there was no immediate danger of irreparable injury to Universal. Universal's president, indeed, did express the opinion that an offer of $32.50 per share would produce a tender of no more than 10 to 15% of Universal's stock. The district court also noted that at a recent meeting of the stockholders of Universal, at which 88½% of the outstanding stock was represented, 96½% of the represented stock voted to amend the charter to require the affirmative vote of 80% of the outstanding stock for the approval of any merger agreement. This seemed to emphasize the opinion of Universal's president that an offer of $32.50 per share would not result in the acquisition of control of Universal by Congoleum, and the district court was of the view that the acquisition by Congoleum of 10 to 15% of Universal's stock would have little or no effect on Universal's operation.

Universal, however, had asserted that there was a substantial risk of loss of some of its customers and business in the event that Congoleum acquired control, and its taking and processing of this appeal strongly indicates its lack of conviction that there is no real risk that Congoleum will obtain control of Universal Leaf. Indeed, there is no magic in the proposed offering price of $32.50, which an official of Congoleum thought would result in the acquisition of more than a majority of Universal's stock. Congoleum had actually arranged financing which, with some of its own funds identified for the purpose, would permit it to pay $36.00 per share for all of the outstanding shares of Universal's common stock. On a per share basis, still more could be paid if Congoleum's offer were restricted to less than all of Universal's outstanding stock.

Just as Universal's processing of this appeal indicates its concern that without the protection of an injunction, Congoleum will acquire control of Universal, Congoleum's stout resistance to the appeal indicates its conviction that far more is at stake than its

acquisition of 10 to 15% of Universal's stock, an acquisition in which there is no obvious basis for its interest. Each of the parties seems to believe that transfer of control of Universal is actually at stake, and this belief is strongly supported by the flexibility with which Congoleum may structure its actual offer.

While the district court characterized Universal's fear of loss of customers as being speculative, it had not undertaken to reach the merits, and it was apparently viewing the situation from the perspective of its earlier conclusion that a transfer of no more than 15% of Universal's stock to Congoleum could be expected. On the basis of that conclusion, it did not consider at all the claims of illegality in Congoleum's financing arrangements since the restrictive conditions in those arrangements would be inoperative until Congoleum acquired 50% or more of Universal's stock.

Because we find unwarranted on this record the conclusion that the transfer of only a minimal amount of Universal stock may be expected, the case should be remanded to the district court with instructions to proceed to the merits on the assumption that, if unrestrained, Congoleum will make a tender offer which probably will result in its acquisition of control of Universal. On that assumption, the court should consider whether, in the absence of such a decree, there is such a threat of irreparable harm to the plaintiff as to outweigh the harm likely to be inflicted upon the defendant by such a decree. *Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Manufacturing Company, Inc.,* 550 F.2d 189 (4th Cir. 1977).

Subsequent to oral argument of this appeal, counsel for Universal and Congoleum have suggested to the panel that it seek an interpretative ruling from the Federal Reserve Board as to whether the Credit Agreement between Congoleum and the participating banks violates Regulations U and X. In light of the fact that this case is being remanded to the district court for further findings, we think this suggestion should be directed to it.

*REMANDED.*